## UNITED STATES *v.* THE SADIE.

*(District Court, S. D. New York.* February 28, 1890.)

1. HARBORS—DEPOSITING REFUSE—PROHIBITED AREA.
    A statutory power to fix the limits of a prohibited area should be executed with reasonable definiteness, and according to the statutory intention.
2. SAME—CONSTRUCTION OF ACT CONG. JUNE 29, 1888.
    The act of June, 1888, prohibited the discharge of refuse, etc., "in the tidal waters of the harbor of New York, or its adjacent or tributary waters, or in those of Long Island sound, within the limits which should be prescribed by the super-visor." The supervisor directed that deposits of refuse, etc., must take place east of the meridian 73° 55′ 56″, and south of parallel 40° 31′ N. *Held:* (1) That the supervisor's direction was not a compliance with the statute, for lack of definiteness and certainty, and for excluding by implication all the "tributary waters," and all the waters of Long Island sound, both of which were to the northward of the designated parallel; that this was in excess of his power, and contrary to the plain intent of the statute. (2) That the words "the tidal waters" in the first section of the act were not to be construed as limiting the subsequent words, "its adjacent or tributary waters," there being no such limitation of the same words in the second and fourth sections, and that the northern limit of the prohibited area, within the tributary waters, was to be fixed by the supervisor, and until that was done by him no suit for penalties would lie for deposits within the Hudson river.

In Admiralty. Action for penalties. Exceptions to libel.
*Edward Mitchell* and *Mr. Rose*, for libelant.
*Alexander & Ash*, for claimants.

BROWN, J. The above libel was filed to recover penalties under the act of congress approved June 29, 1888, (25 St. at Large, 209,) "to prevent obstructive and injurious deposits within the harbors and adjacent waters of New York city, by dumping or otherwise." The libel avers the use of the steam-tug Sadie in discharging and dumping into the waters of the North river, opposite Newburgh, certain loads of mud, contrary to the provisions of the said act, for which the Sadie is made liable. The exceptions aver that no cause of action is stated in the libel, and upon the hearing the act has been submitted to the court for its construction.

The first section of the act declares that the "discharging * * * of refuse, dirt, ashes, cinders, mud, sand, * * * sludge, * * * in the tidal waters of the harbor of New York, or its adjacent or tributary waters, or in those of Long Island sound, within the limits which shall be prescribed by the supervisor of the harbor, is hereby strictly forbidden;" and every such act is made a misdemeanor punishable by fine or imprisonment, or both. Section 2 provides similar punishment of "every master and engineer * * * who shall knowingly engage in towing any * * * boat or vessel loaded with any such prohibited matter to any point or place of deposit or discharge in the waters of the harbor of New York, or in its adjacent or tributary waters, or in those of Long Island sound, or to any point or place elsewhere than within the limits defined and permitted by the supervisor of the harbor hereinafter mentioned." Section 3 makes it the duty of the master, on receiving on board any such forbidden matter, before proceeding to take it to the place of deposit, to apply for and obtain from the supervisor a permit

defining the precise limits within which the discharge may be made, and any deviation from the permit in discharging is made a misdemeanor. Section 4 provides that "all mud  *  *  *  taken  *  *  *  from any slip, basin, or shoal in the harbor of New York, or the waters adjacent or tributary thereto, and placed on any boat,  *  *  *  for the purpose of being taken or towed upon the waters of the harbor of New York to a place of deposit, shall be deposited and discharged at such place, or within such limits, as shall be defined and specified by the supervisor of the harbor as in the third section of this act prescribed, and not otherwise." Under this act the supervisor undertook to prescribe, and in fact did prescribe, "the following limits for the deposit of material, as provided by the first section of the foregoing act, viz.: The deposit of refuse, mud, etc., must take place east of the meridian 73° 55' 56" west, (which passes through the Scotland light-ship,) and south of parallel 40° 31' N." No other designation of limits has been prescribed.

The complaint, in my judgment, cannot be sustained. The first three sections of the act all hinge upon a proper designation by the supervisor of "the limits" within which the deposit of refuse, etc., is to be "forbidden." No designation has been made of prohibited limits except by implication, and that so broadly as to be in excess of the supervisor's power. Section 4 is limited to materials placed on any boat "for the purpose of being taken or towed upon the waters of the harbor of New York to a place of deposit," which has no application to refuse taken and dumped at Newburgh, because the waters of the Hudson river at Newburgh are not "waters of the harbor of New York." The subsequent words, "such mud, dirt," etc., in section 4, refer to mud, dirt, etc., loaded for the same purpose of being towed upon the waters of New York harbor, which is not the present case. Section 1 does not prohibit the deposit of refuse, etc., anywhere except "in the tidal waters of New York harbor, or its adjacent or tributary waters, or in those of Long Island sound, within the limits which shall be prescribed by the supervisor." It does not prohibit deposit of such material on land anywhere; nor in all the "tributary waters," but only in such parts of the tributary waters, etc., as are "within the limits to be prescribed," i. e., not embracing the whole tributary waters. The tributary waters of the harbor of New York, in the largest extension of the word "tributary," might include the brooks from the tops of the Adirondack mountains, and over all the water-shed of the Hudson. But it is neither reasonable to suppose, nor is it credible, that congress intended so wide an application of this act as that a shovelful of dirt should not be thrown into a brook, nor a boat-load of sand carried across a lake, in the Adirondacks, without a permit from the supervisor, under penalty of fine and imprisonment. But, if any such prohibition were authorized to be created, the prohibition itself should at least appear plainly, and without indirection or ambiguity, in order that a citizen proposing to deposit or to transport such material in a particular place may know whether such act is prohibited and criminal, or not. It is a rule that the construction of statutes must be reasonable, since the law-making power is not supposed to intend anything irrational

or absurd. So a power conferred to make acts penal or criminal must be pursued strictly, and executed with reasonable definiteness and certainty, and within a reasonable construction of the statute. The primary condition of the practical application of this act is the designation by the supervisor of fixed and certain limits, within the tributary and other waters of New York harbor and of Long Island sound, within which the deposit of refuse, etc., is prohibited. The act contemplates, first of all, a certain prohibited area within those waters, marked by definite, certain, and intelligible limits. Refuse, dirt, mud, etc., dredged, found, or brought within those limits, becomes thenceforth prohibited material, and subject to the operation of the act. Similar material while outside of the prohibited limits are wholly outside of the scope of the act. They are not prohibited materials, nor within the operation of the statute.

The supervisor has not designated, as required by the act, any limits or boundaries or parts of the tributary waters within which such deposit is to be prohibited. No prohibited area is specified. Instead of that, he has said that "the deposit of material under the first section must be made east of the meridian of the Scotland light-ship, and south of the parallel 40° 31′ north." That section gives him no authority to prescribe where materials shall be deposited. His permissive authority is only to issue special permits under section 3, and that applies only to what is loaded upon vessels. Section 1 has a wider scope and purpose, namely, to create a prohibited area within the tributary waters, wherein no refuse can be deposited from vessels or otherwise. If the supervisor's rescript could be taken to mean conversely, and by implication, what is not expressed in it, namely, that a deposit of refuse, etc., was prohibited anywhere else than to the eastward and southward of the lines specified, then the scope of the act and the rescript would be to make criminal the deposit of a shovelful of dirt anywhere within the boundaries of the United States, on land or water, and within a large part of the high seas. Manifestly, the statute had no such intention, nor had the supervisor any such authority. If, however, the implication of the supervisor's order does not go to that extent, no one can say, or is authorized to say, to what extent less than that it does go, nor where it stops. In other words, it is void, as an implied prohibition, for unreasonableness, indefiniteness, and uncertainty, and for substituting a designation of the place of the deposit, not authorized by section 1, instead of designating with definiteness and certainty the limits of prohibition within the tributary waters, as section 1 requires.

The tidal waters, which in fact extend over 150 miles up the Hudson, cannot, I think, be construed as fixing the northerly limit of the prohibited area, because the words "tidal waters" cannot be connected by construction, in the first section, with the words "its adjacent or tributary waters," as a limitation of them, except by a forced and unnatural reading; and the fact that in sections 2 and 4 the same words, "its adjacent or tributary waters," are used without any connection with "tidal waters," seems to me conclusive that no such construction was intended in the first section of the statute; and the title of the act does not indicate

any such construction. The limits in either direction were not designed to be fixed by the statute itself, but by the supervisor. Those limits were to be within the tributary waters, *i. e.*, to embrace less than the whole of such tributary waters,—and only such as the supervisor should specify by fixing a northerly as well as a southerly limit. This he has not done, except by implication, and that in terms which exclude all the tributary waters to the north, and exclude also all the waters of Long Island sound, both of which are in excess of the authority given by the statute. In my judgment, such a power to create a limit of prohibition, in the case of a highly penal and criminal statute, cannot be properly executed by mere implication or indirection, nor by terms which in themselves prohibit nothing, but leave the extent of the alleged implied prohibition without reasonable definiteness and certainty. The promulgation by the supervisor under section 1 is such a departure from the authority of the statute, and the mode in which it was intended to be exercised, and such a failure to perform what the statute required, namely, to fix the limits of the prohibited area within the tributary waters, as, in my judgment, to have no validity; and no cause of action accrued under it. The defect is one that can be remedied at any moment by the supervisor, by a proper fixing of the limits as contemplated by the statute; and he should be required to execute the statutory power according to its intent before it is enforced against others.

Sections 2 and 3 refer exclusively to cases of "such prohibited matter," or of "such forbidden matter," when loaded on a boat, etc. But it is plain that the words "forbidden matter" and "prohibited matter" do not refer to refuse, dirt, etc., anywhere within the United States, but only to such matter as is within the scope of this act, namely, such as is within, or brought within, the prohibited area that is designed to be constituted and established within the prescribed limits of the tributary waters under the first section. Dirt or refuse in Washington or Philadelphia is not prohibited matter. It first becomes so when found or brought within the prohibited limits. As no prohibited area has yet been legally constituted, there is nothing in this case to which the words "such prohibited matter" can attach. The causes of action under sections 2 and 3, therefore, cannot be maintained, and the libel must be dismissed.